William J. Journey
Plaintiff, pro se
P.O. Box 76969
Fairbanks, Alaska 99707
Ph: Ms. #: (907)389-2780
E-mail: dogsledteam@hotmail.com

RECEIVED
APR 2 3 2007
CLERK, U.S. DISTRICT COURT
FAIRBANKS, ALASKA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| WILLIAM J. JOURNEY, | ) | |
| | ) | |
| Plaintiff, pro se, | ) | |
| | ) | 2d Amended |
| v. | ) | Complaint |
| | ) | Pursuant To |
| UNITED STATES OF AMERICA, | ) | Court Order |
| | ) | Case No: |
| Defendant. | ) | 4-06-cv-00034-RRB |
| | ) | |
| | ) | |

"Death is medically inevitable.  Medical attempted murder is not medical malpractice; and is altogether intolerable."

1.   Pursuant to 2d Court Order, Plaintiff, pro se, submits 2d Amended Complaint.

2.   Plaintiff, pro se, has done the best he can preparing his complaints, considering his disability, handicap, and other medical circumstances.

3.   Plaintiff, pro se, is a "stroke" victim and this

medical condition further complicates his ability to
represent himself as a "normal" pro se litigant.

4.    Plaintiff, is a citizen of the United States of
America (entitled to all constitutional guarantees,
"due process" and fair and equitable administration of
justice, by the court).

5.    Plaintiff, pro se, enlisted into the United
States Army, in 1971, and he was honorably discharged
from the United States Army, in 1980.

6.    Plaintiff, pro se, induction "physical"
(into the US Army) classified him, 100% physically fit for
service, without any disabilities.

7.    Plaintiff, pro se, discharge "physical"
(from the US Army) noted various medical conditions
(and possible other medical conditions).

8.    As a direct result of Plaintiff, pro se,
military service in the armed forces of the United
States of America, he became entitled to compensation
and benefits, pursuant to Veterans Affairs, for his
service connected disabilities.

9.    Plaintiff, pro se, never used tobacco products

prior to this military service.

10.  Plaintiff, pro se, first used tobacco products while in the United States Army; and he continues to use tobacco products, to date.

11.  At no time, during Plaintiff, pro se, military service in the armed forces of the United States of America, did anyone in a position of authority ever advise or counsel him about the adverse effects of tobacco products.  The military policy "encouraged & enticed" Plaintiff, pro se, to use tobacco products.

12.  During Plaintiff, pro se, military service in the armed forces of the United States of America, it was the policy of the armed forces to issue him (and all service members) cigarettes in their "rations" (and you don't waste anything issued to you).  This armed forces policy of issuance of cigarettes in "rations" to Plaintiff, pro se, (and other service members) discontinued, in 1975.

13.  Plaintiff, pro se, is determined by Veterans Affairs, service connected, for "nicotine dependency", with 0% compensation.

14.  On or about, April 14, 1994, Plaintiff, pro se,
filed an administrative tort claim with Department of
Veterans Affairs, Outpatient Clinic & Regional Office,
2925 DeBarr Road, Anchorage, Alaska 99508-2989, "for
$10,000,000.00 in damages for personal injuries and
emotional and psychological harm caused from his 'cigarette
addiction'"; which Veterans Affairs refused to treat.
Plaintiff, pro se, has never received a denial letter, to
date, from the agency (Department of Veterans Affairs,
Alaska VA Healthcare System & Regional Office, 2925
DeBarr Road, Anchorage, Alaska 99508-2989, nor VAOGC
[Veterans Affairs, Office of General Counsel]).
(See, 28 U.S.C. sec. 2675(a); Douglas v. United States,
658 F.2d 445, 449-450 {6<sup>th</sup> Cir. 1981})

15.  Again, more than two years after, Plaintiff,
pro se, presented his administrative claim for medical
malpractice, personal injury, and other matters he
attempted to resolve administratively, with Department
of Veterans Affairs, Alaska VA Healthcare System &
Regional Office, 2925 DeBarr Road, Anchorage, Alaska
99508-2989, without results.  Only after Plaintiff,
pro se, inquired with agency about his administrative
claim did agency finally deny his claim, on or about,

April 26, 2006 (more than 2 years later).

16. The Congressional intent behind FTCA requirement was to encourage the settlement of tort claims by federal agencies themselves at the administrative level; and thus "ease court congestion and avoid unnecessary litigation." <u>Anderson</u> By and Through <u>Anderson v. United States</u>, 803 F.2d 1520, 1522 (9th Cir. 1986) (citing legislative history).

17. Plaintiff, pro se, contends the "indefinite time" rule conflicts with the "statute of limitation" rule. Both rules are "time" relevant and directly affect Plaintiff, pro se, prosecution of his case. It is a contradiction to say in one instance, "statute of limitations" rule, time is relevant justification to to stop the administration of justice; however, on the other hand, the "indefinite time" rule, is not.

18. Plaintiff, pro se, has made a "good faith" effort to avoid accessing the court.

19. Jurisdiction is established pursuant to Federal Tort Claims Act (FTCA), 28 U.S.C. sec. 1346(b), sec. 1402(b), sec. 2401(b) and sec. 2671-2680.

20.   Only the United States may be sued in FTCA.
Other parties whom the claimant wishes to bring into
the action may be sued as pendent parties under
28 U.S.C. sec. 1367, if the claims are related to the
primary suit against the Unites States.

21.   The FTCA covers acts or omissions of
Employees of Executive departments, Legislative
Branch employees for non-legislative acts of Congress,
<u>McNamara v. United States</u>, 199 F.Supp. 879 (D.D.C.
1961), and Judicial Branch officer for non-judicial
acts.   <u>United States v. Le Patourel</u>, 471 F.2d 405,
(8th Cir. 1978); 28 U.S.C. sec. 2671.

22.   Venue is properly established.

23.   Plaintiff, pro se, does not believe there
are any "statute of limitations" issues that defendant
can claim.

24.   Plaintiff, pro se believes there are not FTCA
"exceptions" specific to this lawsuit, nor sounding as
Enumerated in 28 U.S.C. sec. 2680.

25.   Plaintiff, pro se, believes, at all times,
the acts or omissions, negligence, fraud, attempted
murder, medical malpractice, personal injuries, occurred

in the State of Alaska.  However, there are some instances,
where a doctor/physician supervisor, stationed at VISN 20,
Portland, Oregon, practicing medicine telephonically,
ordering subordinate employee doctor/physician, situated at
Alaska VA, Healthcare System & Regional Office, Anchorage,
Alaska, not to treat Plaintiff, pro se, life threatening
medical conditions (multiple heart conditions and
diabetes), nor order life-supporting medications, (for the
same medical conditions), presents possibly a "diversity"
issue!?

26.  The duty of the defendant in a tort action is
defined in accordance with the law of the state where
the negligence occurred (Alaska).  <u>Richard v. United
States</u>, 369 U.S. 1 (1962).

27.  Plaintiff, pro se, peculiar and special
relationship, during his military service with defendant
was "distinctively federal in character".  Plaintiff,
pro se, "distinctively federal in character"
relationship in the military, after his discharge remains
"distinctively federal in character" in Veterans'
Benefit Act. [because service in the Armed Forces is a
prerequisite condition to statutory "no fault"
compensation scheme (in Veterans' Benefit Act).  See,

**Stencel Aero Engineering Corp v. United States**, 431 U.S. 666, 671-672, 97 S.Ct. 2054, 2058, 52 L.Ed2d 665 (1977).

28.  It is an undisputable fact, Alaska VA Healthcare System & Regional Office, Anchorage, Alaska (AKVAHSRO) rated Plaintiff, pro se, service connected veteran less than 100% and also adjudicated him "Unemployable", with no further exam controls established since improvement is not anticipated (Permanent and Total Disability), effective: November 29, 1994.

29.  It is an undisputable fact, between November 29, 1994 to December 31, 2005, AKVAHSRO, denied Plaintiff, pro se, his rightful entitlement to emergency medical treatment and care, life-supporting medications, consequently causing, and aggravating, his multiple heart conditions, diabetes, and other personal injuries. These acts or omissions are negligent and medical malpractice, by violating the standard of care practice of medicine.  (See, Information Letter 10-97-035, "Eligibility Criteria For VA Health Care To Veterans Who Have A Total Disability Rating Based On Unemployability", dated: September 18, 2002.)

30.  Plaintiff, pro se, is not aware of any

reasonable, logical, or legal explanation, nor
justification, why AKVAHSRO has never acted on my
administrative claim, for "cigarette addiction"
(or 14 years).

31.  Plaintiff, pro se, is not aware of any
reasonable, logical, or legal explanation, nor
justification, why AKVAHSRO didn't act until,
April 26, 2006 (more than 2 years after presentment
of administrative claim).

32.  Plaintiff, pro se, contends he is
substantially prejudiced prosecuting his case by AKVAHSRO
unconscionable, unacceptable and unjust delays acting on
his administrative claims; consequently, diminishing the
value of evidence.  Over time, memories fade, evidence is
lost or disappears (or destroyed because of the federal
"Paperwork Reduction Act").  Where is AKVAHSRO diligence!
(See, United States v. Kubrick, 444 U.S. 111, 117 (1979)).

33.  Previous to existing complaint, Plaintiff,
pro, se, filed a lawsuit, in 1999, against USA; because
Bassett Army Community Hospital Pharmacy (BACH),
"incorrectly filled" his narcotic pain medication
causing Plaintiff, pro se, to suffer a "myocardial

infarction", after he took 6 of the "incorrectly filled" narcotic pain medication. Pursuant to a mutual agreement, by and between Asst. U.S. Attorney, Regional Counsel and Plaintiff, pro se, Plaintiff, pro se, agreed to dismiss his complaint in exchange for AKVAHSRO decision to determine Plaintiff, pro se, multiple heart conditions service connected, pursuant to 38 C.F.R. 1151, rating him 100% disabled, total and permanent, without any further evaluations. AKVAHSRO failed to honor their side of the agreement.

34. Plaintiff, pro se, contends he was tricked into agreeing, and signing, Asst. U.S. Attorney dismissal; and he (Plaintiff, pro se) has suffered substantial prejudice in future dealing with AKVAHSRO about service connection for his multiple heart conditions caused BACH's act or omission of negligently and "incorrectly filing" his narcotic medication. Plaintiff, pro se, was a "fool" to believe Asst. U.S. Attorney and Regional Counsel would honor their part of the agreement.

35. Plaintiff, pro se, incorporates all previous complaints, filed with the court, as substantive to his present 2d Amended Complaint.

36. Plaintiff, pro se, contends he was never "informed" by any medical professional about the "incorrectly filled" narcotic medication BACH "poisoned" him with, nor the adverse affects, to date. Plaintiff, pro se, has only suffered the medical consequences, multiple heart conditions, diabetes, and other medical conditions, emotional and psychological harm from BACH's acts or omissions by "incorrectly filing" his narcotic pain medical, DEMEROL; with something else.

37. Plaintiff, pro se, contends because he was denied participation in BACH's Qualitative Assurance Investigation (QAI), he was denied his constitutional right to protect his good name, reputation, honor, or integrity because of what the government (was) doing to him. See, <u>Wisconsin v. Constantineua</u>, 400 U.S. 433 (1971).

38. It is a undisputable fact, AKVAHSRO denied Plaintiff, pro se, managed care and "continuity of care", after Dr. Escobar, M.D.; and, on or about, June 21, 2002, causing Plaintiff, pro se, to suffer "congestive heart failure". Dr. Brian A. Tansky, M.D., Fairbanks Memorial Hospital Emergency, misdiagnosed Plaintiff, pro se, emergency as "Colonic distension

and constipation", prescribing "Magnesium citrate, Dulcolax, Reglan, and GI cocktail". AKVAHSRO paid for the emergency medical treatment; however, failed to assign Plaintiff, pro se, a provider. AKVAHSRO act or omission are negligent which cause, contributed and aggravated Plaintiff, pro se, multiple heart conditions, and diabetes. This is a violation of the standard of care and practice of medicine.

39. It is a undisputable fact, AKVAHSRO continued to deny Plaintiff, pro se, managed care and "continuity of care", after Dr. Escobar, M.D.; and, on or about, June 27, 2002, causing Plaintiff, pro se, to suffer "congestive heart failure". Dr. Susan J. Tate, M.D., Fairbanks Memorial Hospital Emergency, misdiagnosed Plaintiff, pro se, emergency as "Umbilical Hernia and constipation", prescribing "Colace and Phenergan", with follow-up with Dr. Wrigley, M.D. AKVAHSRO paid for the emergency medical treatment; however, failed to assign Plaintiff, pro se, a provider. AKVAHSRO act or omission was negligent which cause, contributed and aggravated Plaintiff, pro se, multiple heart conditions and diabetes. This is a violation of the standard of care and practice of medicine.

40.  It is an undisputable fact, AKVAHSRO continued to
deny Plaintiff, pro se, managed care and "continuity of
care", after Dr. Escobar, M.D.; and, on or about,
June 28, 2002, causing Plaintiff, pro se, to suffer
"congestive heart failure".  Fairbanks VA, CBOC,
authorized Plaintiff, pro se, an appoint with a
doctor, at Fairbanks Urgent Care", who stated he (doctor)
didn't see an "Umbilical Hernia", however there was
something terribly wrong and his clinic didn't have the
resources to treat Plaintiff, pro se, and referred him
to Dr. Teslow, M.D., Surgeon.  AKVAHSRO paid for
the medical treatment; however, failed to
assign Plaintiff, pro se, a provider.  AKVAHSRO act or
omission are negligent which cause, contributed and
aggravated Plaintiff, pro se, multiple heart conditions
and diabetes.  This is a violation of the standard of care
and practice of medicine.

41.  It is a undisputable fact, AKVAHSRO continued to
deny Plaintiff, pro se, managed care and "continuity of
care", after Dr. Escobar, M.D.; and, on or about,
June 28, 2002, causing Plaintiff, pro se, to suffer
"congestive heart failure".  After Fairbanks Urgent Care
medical appointment, Plaintiff, pro se, returned to

Fairbanks Memorial Hospital Emergency and saw Dr. Susan J. Tate, M.D., misdiagnose a second time,

Plaintiff, pro se, emergency as "Abdominal pain, unclear etiology", prescribing "Demerol #25 and Phenergran #25, IV (push)", ordering him to return to emergency room in 12 hours.  AKVAHSRO act or omission not assigning Plaintiff, pro se, a provider was negligent which cause, contributed and aggravated Plaintiff, pro se, multiple heart conditions and diabetes.  This is a violation of the standard of care and practice of medicine.

42.  It is an undisputable fact, about 12 hours later, on June 29, 2002, Plaintiff, pro se, returned to Fairbanks Memorial Hospital Emergency and saw Dr. Michael R. Burton, M.D.  Dr. Burton, M.D. reviewed Plaintiff, pro se, medicals and conferred with Fr. Stirling, M.D.  Both doctors examined Plaintiff, pro se, and emergency hospitalized him, for "poor follow-up".  After, Dr. Stirling consulted with Alaska Heart Institute, Plaintiff, pro se, was diagnosed suffering "congestive Heart failure".

43.  It is an undisputable fact, on or about, July 2, 2002, Dr. Escobar, M.D. discharged  Plaintiff, pro se, and instructed him to see his newly assigned

provider, Dr. McCabe, M.D., at Fairbanks VA, CBOC, on or about, July 3, 2002.

44.  It is an undisputable fact, on or about, July 3, 2002, Plaintiff, pro se, saw Dr. McCabe, M.D., at Fairbanks VA, CBOC.  Because of the 4th of July weekend, Dr. McCabe, M.D. rescheduled Plaintiff, pro se, "post discharge examination", until July 8, 2002.  Dr. McCabe, M.D. was an employee of AKVAHSRO, assigned to Fairbanks VA, CBOC, and his act or omission rescheduling Plaintiff, pro se, "post discharge examination" to another date was negligent and violated the standard of care practice of medicine, that caused Plaintiff, pro se, to suffer further medical conditions and crisis.

45.  About 6 hours after Plaintiff, pro se, saw Dr. McCabe, M.D., on July 3, 2002, Plaintiff, pro se, suffered a massive stroke and multiple heart attacks. Plaintiff, pro se, was transported to Fairbanks Memorial Hospital Emergency, where he suffered "sudden death". Plaintiff, pro se, recovered; and, on July 5, 2002, Plaintiff, pro se, was "life-flight" to Alaska Heart Institute, Providence Hospital, Anchorage, Alaska.

46.  On July 10, 2002, Plaintiff, pro se, was

discharged from Alaska Heart Institute, Providence
Hospital, with medical orders to see his provider,
Dr. McCabe, M.D.

47.  Plaintiff, pro se, was scheduled an appointment
to see Dr. McCabe, M.D., on or about, July 12, 2002.
Because Dr. McCabe, M.D. was unavailable, Plaintiff, pro
se, saw (CPT) Dr. Footit, M.D., US Army, BACH, for
"post discharge examination".

48.  Plaintiff, pro se, contacted (CPT) Dr. Footit,
M.D., US Army, BACH, on or about, July 16, 2002, because
Dr. McCabe, M.D. was still unavailable and he was suffering
severe headaches.  (CPT) Dr. Footit, M.D., US Army, ordered
Plaintiff, pro se, to report to Fairbanks Memorial
Hospital Emergency where he would meet him.  Plaintiff, pro
se, saw Dr. Carroll Phillips, M.D., who examined and
diagnosed him suffering Acute cephalgia hyperfalmeia –
recent history of CVA and MI.  Dr. Phillips, M.D.
advised Plaintiff, pro se, to never come alone to Fairbanks
Memorial Hospital Emergency.  Plaintiff, pro se, never
fully understood Dr. Phillips, M.D. admonishment.
(CPT) Dr. Footit, M.D. consulted with Dr. Phillips, M.D.
and Plaintiff, pro se, was released.

49.  It is an undisputable fact, on or about,
September 4, 2002, AKVAHSRO ordered Plaintiff, pro se,
to violate his treatment plan, ordered by Dr. Pulliam,
M.D., Cardiologist, (deceased), "not to deviate
from prescribed medications, even by brand name, by
taking "generic" equivalents.  Because Plaintiff, pro
se, would not violate Dr. Pulliam, M.D., Cardiologist,
medical orders and prescription, as AKVAHSRO demanded,
AKVAHSRO, classified Plaintiff, pro se, as "non-compliant"
veteran patient.  AKVAHSRO acts and omissions are
negligent, and intentional interference in doctor-patient
relationship, established between Plaintiff, pro se, and
Dr. Pulliam, M.D., Cardiologist.  (No wonder veteran
cardiac patient mortality is greater in VA hospitals
than Medicare patients treated in non-VA hospitals.)

50.  Plaintiff, pro se, complained to Dr. McCabe,
M.D., his provider, about AKVAHSRO Pharmacy, demanding
he violate Dr. Pulliam, M.D., Cardiologist, medical
orders and prescription, and Dr. McCabe, M.D. substantially
said, "he couldn't do anything about it, and it wasn't
his problem".  Dr. McCabe, M.D. act or omission violated
his doctor-patient relationship with Plaintiff, pro se,
causing him to suffer unnecessary stress that possibly

aggravated his medical conditions, negatively.

51.  It is an undisputable fact, on February 5,
2003, Plaintiff, pro se, informed Dr. McCabe, M.D.,
Fairbanks VA, CBOC, that veteran William H. Joy's
(deceased) medicals were included into his medicals.
Dr. McCabe, M.D. act or omission not to report
accurately Plaintiff, pro se, disclosure to him in
his medicals, is negligent and violates the standard
of care practice of medicine, informed consent; and
intentional fraud to hide his (Dr. McCabe, M.D.)
medical malpractice, further.

52.  It is an undisputable fact, between
July 17, 2002 to present, Dr. McCabe, M.D., nor defendant,
ever informed Plaintiff, pro se, that his managed care,
and medical treatment and care, and prescriptions were
appropriate, accurate, and didn't interfere with
Plaintiff, pro se, health, welfare and safety; because
his (Plaintiff, pro se) medicals were contaminated with
(deceased) William H. Joy medicals.  This act or
omission is negligent and violates the standard of care
practice of medicine, causing Plaintiff, pro se, to
suffer, possible and probable, further medical
consequences; and diabetes.

53.  It is an undisputable fact, on or about,
February 28, 2003, and because Plaintiff, pro se,
"triglycerides" increased from 2000 to over 5000 and
"cholesterol" increased to 800, Plaintiff, pro se,
asked Dr. McCabe, M.D., if he was diabetic.  Dr.
McCabe, M.D. responded "No!" or words to that affect.
Dr. McCabe, M.D. act or omission is negligent because
Plaintiff, pro se, is diabetic.  Because of Dr. McCabe,
M.D. Plaintiff, pro se, was denied medical treatment and
care for his obvious diabetes; which he refused to
diagnose (because of his medical malpractice).

54.  It is an undisputable fact, Plaintiff, pro se,
asked Dr. McCabe, M.D. to order a "GTT" diabetes test.
Dr. McCabe, M.D. ordered the "GTT", and afterwards
canceled the "GTT" without informing Plaintiff, pro se.
Dr. McCabe, M.D. act or omission is negligent violating
the standard of care practice of medicine denying
Plaintiff, pro se, medical treatment and care; and diabetes
intervention.

55.  On or about, May 13, 2003, Plaintiff, pro se,
filed and complaint against Dr. McCabe, M.D. with
Manager, Fairbanks VA, CBOC, requesting another provider.
AKVAHSRO, Asst. Chief, Clinical Affairs, Mr. T. Michael

Woodyard, retaliated against Plaintiff, pro se, creating
the most restrictive measures for Plaintiff, pro se,
continuity of care, medical treatment and care,
medications, tests. Mr. Woodyard order Manager, Fairbanks
VA, CBOC, to refer, any and all managed care for
Plaintiff, pro se, directly to him for action.

56. Between May 13, 2003 – October 21, 2003,
Mr. Woodyard, tormented Plaintiff, pro se, demanding
Plaintiff, pro se, see Dr. McCabe, M.D., or see
no doctor. Mr. Woodyard act or omission, and abuse
of power and office, are negligent and caused
Plaintiff, pro se, to suffer unnecessarily pain and
discomfort, causing Plaintiff, pro se, to suffer
aggravation to his existing medical conditions, and
possibly and probably, caused other personal injury;
and medical conditions. Mr. Woodyard is not a medical
professional. (Plaintiff, pro se, believes Mr.
Woodyard was intentionally attempting to cause him to
suffer a medical emergency that could, possibly and
probably, cause Plaintiff, pro se, loss of life, or
death.)

57. "Nurse Practitioner" (NP), Ms. Brenda Young,
LPN, diagnosed Plaintiff, pro se, diabetic, pursuant

to lab test, on or about, October 21, 2003.  Mr. Woodyard,

denied every request Plaintiff, pro se, made to see a

doctor to treat his diabetes.  Plaintiff, pro se, asked to

see Army doctor, at BACH, and Mr. Woodyard refused to

authorize Plaintiff, pro se, an appointment to treat his

multiple heart conditions, and newly diagnosed diabetes.

Mr. Woodyard demanded Plaintiff, pro se, see

Dr. McCabe, M.D.  Mr. Woodyard act or omission creating

the most restrictive measures for Plaintiff, pro se,

to get medical treatment and care is negligent; and

abuse of power.

58.  On November 26, 2003, and because Plaintiff,

pro se, was seriously sick, he requested pre-approval

authorization to see Dr. Ticman, M.D. (Internal Medicine)

at Fairbanks Clinic from Mr. Woodyard.  Mr. Woodyard

denied Plaintiff, pro se, request for pre-approval

authorization.  Plaintiff, pro se, saw Dr. Ticman, M.D.,

who examined him and ordered an ambulance, because

Plaintiff, pro se, was dying.  Dr. Ticman, M.D. (Internal

Medicine) asked Plaintiff, pro se, why the VA was trying

to kill him.  Plaintiff, pro se, didn't respond and

then the ambulance arrived.  Dr. Ticman, M.D. ordered

Plaintiff, pro se, immediately confined in "ICU"; where

Dr. Starks, M.D. (Internal Medicine) to charge of
Plaintiff, pro se. Mr. Woodyard act or omission is
negligent and the most restrictive measures for
Plaintiff, pro se, to receive entitled medical
treatment and care. Mr. Woodyard was almost successful
in his attempt to murder Plaintiff, pro se, by
creating, by his power, medical circumstances that could,
possibly and probably, cause Plaintiff, pro se, to
suffer loss of life, and death.

59. During Plaintiff, pro se, "ICU" confinement,
Dr. Starks, M.D. ordered Plaintiff, pro se, "life-
flight" to Alaska Heart Institute, Providence
Hospital; and AKVAHSRO, COS, Dr. Cynthia A. Joe, M.D.
(Internal Medicine) intervened and denied the treating
physician emergency "life-flight" order, until an
Army doctor evaluated Plaintiff, pro se, emergency.
Dr. Joe, M.D. act or omission is negligent and
violates the standard of care practice of medicine;
and is an obvious attempt to create medical circumstances
that could, possibly and probably, cause loss of life and
death of Plaintiff, pro se. Dr. Joe, M.D. attempted
to murder Plaintiff, pro se, by medical means because
she can, by act of Congress. A person sentence to

death by the courts has more rights to life than
Plaintiff, pro se (and veterans) dealing with
the VA.

60. In the mean time, and during Plaintiff, pro
se, "ICU" confinement, fighting to stay alive, and
before Plaintiff, pro se, saw (CPT) Dr. Hawley, M.D
(Internal Medicine), Ms. "Rosie", Manager, Fairbanks
VA, CBOC, pursuant to COS, Dr. Cynthia A. Joe, M.D.
order, visited Plaintiff, pro se, and demanded
Plaintiff, pro se, sign a "Healthcare Agreement".
Plaintiff, pro se, informed Ms. "Rosie" he would not
sign the "Healthcare Agreement" until he had all
of his mental faculties and his medical emergency
was over; and asked her to leave him alone. Ms.
"Rosie" tossed the "Healthcare Agreement" on a
chair in his "ICU" room; and departed. Her actions
caused Plaintiff, pro se, to suffer unnecessary
stress which caused his heart to stop and Plaintiff,
pro se, AICD fired and restarted his heart.
This act or omission is negligent violating the
standard of care practice of medicine; and the
"Healthcare Agreement" has nothing to do with
Plaintiff, pro se, entitlement to medical treatment

and care.

61.  Plaintiff, pro se, asked (CPT) Dr. Hawley,
M.D. (Internal Medicine) if he agreed with Dr. Starks,
M.D. (Internal Medicine) order to "life-flight"
him to Alaska Heart Institute, Providence Hospital,
and (CPT) Dr. Hawley, M.D. responded he concurred
with Dr. Starks, M.D. decision; but that wasn't his
call.  This act or omission is a negligent violation
of the standard of care practice of medicine, as the
treating physician of Plaintiff, pro se, to let
Dr. Joe, M.D. to interfere with the doctor-patient
relationship between Dr. Starks, M.D.; and afterwards,
(CPT) Dr. Hawley, M.D.  AKVAHSRO, COS, Dr. Joe, M.D.
was not the treating physician of Plaintiff, pro se,
medical emergency.

62.  Between Dr. Starks, M.D. and (CPT) Dr. Hawley,
M.D., Plaintiff, pro se, diabetes finally treated and
brought back under control.  COS, Dr. Joe, M.D. never
authorized Plaintiff, pro se, to see a cardiologist.
COS, Dr. Joe, M.D. act or omission violates the
standard of care practice of medicine and caused further
aggravation of Plaintiff, pro se, multiple heart
conditions, unnecessarily.

63. (CPT) Dr. Hawley, M.D., BACH, completed Plaintiff, pro se, "post discharge examination" and ordered refills of Plaintiff, pro se, life-supporting heart medications and diabetes medications. (CPT) Dr. Hawley, M.D. ordered Plaintiff, pro se, to see Dr. Miller, M.D., Fairbanks VA, CBOC, on December 17, 2003.

64. Plaintiff, pro se, arrived at scheduled appointment with Dr. Miller, M.D., on December 17, 2003, and Ms. "Rosie", Manager, Fairbanks VA, CBOC, met Plaintiff, pro se, accompanied by Military Police, and informed him that if he didn't sign the "Healthcare Agreement" to leave the clinic. Plaintiff, pro se, departed Fairbanks VA, CBOC. This act or omission is a negligent violation of the standard of care practice of medicine causing Plaintiff, pro se, to suffer further aggravation of his medical conditions; and diabetes.

65. Between December 17, 2003, and May 23, 2004, AKVAHSRO, COS, Dr. Joe, M.D. repeatedly denied Plaintiff, pro se, "continuity of care" and life-supporting heart and diabetes medication; which he was entitled to and authorized, according to his rating. Consequently,

Plaintiff, pro se, multiple heart conditions and diabetes
deteriorated and he was once again emergency hospitalized,
at Fairbanks Memorial Hospital Emergency.  COS, Dr. Joe,
M.D. did not allow Dr. Miller, M.D., Plaintiff, pro se,
provider, to assist in his medical emergency, nor (CPT)
Dr. Hawley, M.D., BACH.  COS, Dr. Joe, M.D. act or
omission is negligent and a violation of the standard
of care practice of medicine by creating the most
restrictive measure for Plaintiff, pro se, to receive
entitled medical treatment and care; and emergency
medical treatment.

66.  On May 27, 2004, "ICU" the treating physician
ordered Plaintiff, pro se, "life-flight" to Alaska
Heart Institute, Providence Hospital; and, again, COS,
Dr. Joe, M.D. interfered to stop his emergency medevac.
The treating physician substantially informed COS,
Dr. Joe, M.D., she was not the treating physician of
record; and Plaintiff, pro se, will certainly dye if he
is not "life-flight" to Alaska Heart Institute; and her
threats of non-payment for medical services rendered
is entirely another matter, that will be settled after
his patient (Plaintiff, pro se) medical emergency
conditions are resolved.  Plaintiff, pro se, treating

physician told him, he was not going to let an idiot
kill his patient!  COS, Dr. Joe, M.D. intentional
interference, and threat of non-payment for medical
services rendered by treating physician, is indicative
of extreme measure taken by COS, Dr. Joe, M.D. to
exacerbate Plaintiff, pro se emergency medical treatment
and care.  COS, Dr. Joe, M.D. (Internal Medicine)
has the prerequisite knowledge, background, and medical
expertise to know that any interference in Plaintiff,
pro se, emergency medical conditions could, possibly
and probably, cause him loss of life, and death.  COS,
Dr. Joe, M.D. also has the prerequisite knowledge,
background, and medical expertise to create medical
circumstances, where delays can cause, possibly and
probably, loss of life, and death to Plaintiff, pro se.
Plaintiff, pro se, believes COS, Dr. Joe, M.D.
attempted to murder him, by medical means caused by medical
consequences.

    67.  Plaintiff, pro se, contends Dr. Leslie
Burger, M.D., VISN 20, participated, and approved
COS, Dr. Joe, M.D. attempt to murder him by medical
means; in and effort to hide all of their acts or
omissions and negligence, respectively; and to protect

the reputation of their employees and agency.

68. Plaintiff, pro se, almost died because of
COS, Dr. Joe, M.D. and Dr. Leslie Burger, M.D.
act or omission and negligence, violating the'
standard of care practice of medicine, during his
last medical emergency. The treating physician of
records at "ICU", Fairbanks Memorial Hospital, got
Plaintiff, pro se, to Alaska Heart Institute in-the-
nick-of-time, so the cardiologist could save his life,
by a 5-way heart by-pass. Dr. Nolan, M.D. Endocrinolgist,
got Plaintiff, pro se, diabetes back under control.

69. Plaintiff, pro se, contends that the "Healthcare
Agreement" is not intended to interfere in Plaintiff, pro
se, medical treatment and care, nor his medical
emergencies. Plaintiff, pro se, has "Patient Rights"
and has a right to release his provider when he loses
trust and faith in his medical advise, with any
retaliation – by creating the most restrictive measures
for him to get his entitled medical benefits, according
to his rating.

What has been averred in this complaint that
happened to Plaintiff, pro se, by AKVAHSRO, and their
employees, should have never happened to him. Just

like what has happened to the veterans at Walter Reed
Army Medical Hospital should have happened, either.
Until the courts take issue with the VA and demand
they follow their own regulations, instead of excusing
their acts or omissions of negligence, fraud, medical
malpractice, and attempted murder, Plaintiff, pro se
(and other veterans) will never be safe, or protected.
AKVAHSRO has been literally getting away with murder
by medical means, by not following their own mandates,
regulations, rules and laws, and excusing their acts
and omissions of negligence and medical malpractice,
as medical consequences.

THEREFORE, Plaintiff, pro se, request the sum
certain amount of $10,000,000.00 in damages be ordered
against defendant for their medical malpractice.
Respectfully submitted,

April 20, 2007

William J. Journey
Plaintiff, pro se
P.O. Box 72969
Fairbanks, Alaska 99707
Ph: Ms. #: (907)389-2780
E-mail: dogsledteam@hotmail.com

CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2007, a copy
of 2d Amended Complaint was served on Asst. U.S.

**Attorney, Richard L. Pomeroy, by and through, U.S.**

**Attorney Branch Office, located at: Federal Building,**

**Fairbanks, Alaska.**

**Respectfully submitted,**

*April 1 to, 2007*

**William J. Journey**
**Plaintiff, pro se**
**P.O. Box 72969**
**Fairbanks, Alaska 99707**
**Ph: Ms. #: (907)389-2780**
**E-mail: dogsledteam@hotmail.com**